**In re EVANS PRODUCTS CO., et al., Debtor(s).**

**Bankruptcy No. 85–00512–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Nov. 21, 1985.

Levin & Weintraub & Crames, New York City, Arky, Freed, Stearns, Watson, Greer & Weaver, Miami, Fla., for debtors and debtors in possession.

Zubrensky, Padden, Graf & Maloney, Miriam R. Horwitz, Milwaukee, Wis., for International Union, United Automobile, Aerospace & Agricultural Implement Works of America and the Local Union 553.

Robert A. Mark, Arky, Freed, Stearns, Watson, Greer & Weaver, Miami, Fla., for Evans Products Co.

### ORDER AUTHORIZING EVANS PRODUCTS CO. TO IMPLEMENT INTERIM CHANGES IN COLLECTIVE BARGAINING AGREEMENT

THOMAS C. BRITTON, Bankruptcy Judge.

On October 15 Evans Products Co., a chapter 11 debtor, moved under 11 U.S.C. § 1113(e) for leave to implement interim changes in its collective bargaining agreement with its hourly employees at the Racine Foundry. (C.P. No. 716a). The Union has responded (C.P. Nos. 750 & 751). The matter was heard on November 4 and November 14.

The foundry with an annual capacity of 30,000 tons, provides steel castings for manufacturers of heavy duty trucks, railcars and farm and construction equipment. Of its 500 total employees, some 420 constitute a collective bargaining unit represented by the UAW. It has six contracts, all dated November 7, 1982, which form collectively a comprehensive Labor Agreement.

For each year beginning with 1982, the foundry has operated at or below one-half its capacity and has experienced losses which total over $15 million. The loss estimated for 1985 is $2.16 million. The losses are due to a combination of several factors. The recession in the construction industry has forced most of its customers to cut back on their orders. The foundry was designed and constructed before World War II. Foreign competition with more modern facilities and substantially lower labor costs has forced price reductions in excess of 20%.

These substantial losses have been funded by the debtor from its national network of retail outlets. For this and other reasons, the debtor's financial distress forced it to file for bankruptcy in March, 1985 and the debtor can no longer absorb or fund the losses generated by the Racine Foundry.

Commencing in 1982, management has implemented a vigorous cost containment program which has resulted in an annual decrease in the net operating loss from $5.3 million in 1982 to the estimated loss for

1985 of $2.2 million. The net effect of these efforts has been to reduce the cost of sales by 7.6%, most of which (4.5%) has been effected this year. These efforts include its 21 major suppliers, its utilities, and local tax reduction.

The wages and benefits paid to its Union employees presently represent 47% of the foundry's total cost of sales. They average $16.81 per man hour of which 42% is for benefits. This expense represents about $1 million a month. Finding itself between a rock and a hard place, the debtor on June 21 requested the Union to reopen the Labor Agreements. The Union has responded and during the four months before the present motion was filed, the parties engaged in 14 negotiating sessions. The debtor originally requested a reduction of $4.34 per hour in the wage and fringe benefit costs. During the course of negotiations, this demand was reduced to $3.16 per hour. The Union's final proposal would represent $1.45 per hour. Neither party could bridge the substantial gap between the negotiators and negotiations have been essentially stalemated since early September.

Each party, as is probably to be expected, has accused the other of bad faith. I disagree. I find that each party has made a sincere and determined effort to reach a fair and acceptable figure and they have simply been unable to reach agreement. I have been impressed with the technical representatives relied upon by both parties and find no basis to be critical of either.

The recently enacted provisions of 11 U.S.C. § 1113 provide a mechanism for a chapter 11 debtor to reject its collective bargaining agreement. This debtor has not initiated any effort to reject its agreements with the Union. This debtor has the option to either assume or reject its collective bargaining agreement at any time to and including the confirmation of its plan of reorganization. § 365(d)(2). The debtor has been ordered to file its plan of reorganization not later than March 21, 1986.

I am satisfied that this debtor cannot continue to operate the Racine Foundry without a significant adjustment of its collective bargaining agreement. It is clear to me, therefore, that this debtor must either achieve a voluntary modification of the agreement before submitting its plan or it must propose rejection of the collective bargaining agreement in its plan or it must shut down the facility, which would of course eliminate the operating loss and moot the Labor Agreement. I do not consider it realistic to assume that the foundry can be sold by the debtor as a going concern until and unless the Agreement is substantially modified or replaced.

I have reached the foregoing conclusions because the present negative cash flow cannot be accepted by a corporation in bankruptcy. Both the management and the creditors' committee have accepted the judgment that the plant will have to be closed if the negative cash flow cannot be arrested. There is no reasonable prospect of a market change in time to prevent the closing of the plant. The existing Labor Agreements call for substantial increases to take effect in January. It is certain, therefore, that the existing Agreements cannot and will not be assumed by this debtor in their present form.

Section 1113(e) provides that:

"If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot."

This provision is designed to provide temporary economic relief for a debtor in reorganization under the precise circumstances present here. This court is granted discretion to allow a debtor to breach its Labor

Agreement on a *temporary* basis "if essential to the continuation of the debtor's business."

██ I find that a *prompt* average hourly reduction of $2.84 in the debtor's present average cost per employee hour under its collective bargaining agreement is essential to the continuation of the debtor's Racine Foundry operation. I recognize that this figure is 10% less than the amount demanded by the debtor and presently estimated to be necessary to eliminate the negative cash flow. However, I have taken into consideration (a) the unavoidable uncertainty inherent in these projections and (b) the fact that with the cooperation of both parties it has been possible for this court to reach and implement this decision substantially faster than this debtor could reasonably have anticipated. These circumstances should permit this debtor to continue its operation at least until its plan is presented and considered. At that time, a permanent solution can be and must be reached.

The parties have both recommended that the Union be given an opportunity to recommend the specific adjustments in both benefits and wages necessary to effect the $2.84 reduction found immediately necessary by this court. I welcome that recommendation and, therefore, direct that the foregoing reduction be implemented with respect to all compensation payable or accrued after Sunday, December 15, 1985. If the parties have not agreed upon the precise changes necessary to implement that reduction by Thursday, December 5, 1985, a hearing will be held at 10:30 a.m., after which I will direct the specific implementation. At that same hearing, I will consider any application for rehearing timely filed by either party. I specifically caution both parties that unless rehearing is granted on December 5, I will direct the specific implementation of the cost reduction immediately following that hearing with or without the agreement of the parties.

To accommodate counsel and to spare both parties unnecessary travel expense, the hearing on December 5 will be conducted on the record by telephone conference unless counsel requests otherwise.

██ Recognizing the inherent fallibility of the projections upon which this decision is based, jurisdiction is expressly retained to hear either party at any time if the debtor's actual experience at the Racine Foundry suggests the necessity of a modification of the figure found at this time to be necessary to ensure the continued interim operation of the Foundry. To assist this purpose, the debtor is instructed to make available to the Union as promptly as possible its essential operating figures for the Foundry for the months of November 1985 and for each month thereafter so long as this order remains in effect.

██ This interim order does not terminate or permanently alter any provision of the collective bargaining agreements presently in place. Each party continues to have every option available to it including the Union's right to present a claim for damages resulting from rejection of the Agreements, if they are ultimately rejected, and to exercise its right to call a strike. Similarly, I recognize that only the Union and, in the last analysis, the individual employees affected by the reduction which I have found to be essential to the continuation of the Foundry operation can determine whether it is to the employees' advantage to accept the unavoidable 17% reduction in wage-benefits I have ordered at this time. If the employees find this adjustment impossible, the debtor is authorized to initiate the procedure specified in the Labor Agreements to close the Foundry without further application to this court. That procedure, I understand, would require from 60 to 90 days.