**BECKLEY COAL MINING COMPANY, Appellant/Debtor,**

v.

**UNITED MINE WORKERS OF AMERICA, Appellee.**

**Civ. A. No. 87–672 LON.**

United States District Court, D. Delaware.

Jan. 11, 1988.

Richard G. Elliott, Jr. (argued), William W. Bowser, and Emily B. Horton, of Richards, Layton & Finger, Wilmington, Del., for appellant/debtor.

Thomas C. Crumplar, and Douglas B. Canfield, of Jacobs & Crumplar, Wilming-

ton, Del. (Barbara J. Hillman (argued) and Mark S. Stein, of Cornfield and Feldman, Chicago, Ill., Michael H. Holland, Washington, D.C., George N. Davies, Beckley, West Va., of counsel), for appellee.

James L. Patton, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, Del. for Creditors Committee.

Charlene D. Davis, Dept. of Justice, Wilmington, Del., for the Government.

## OPINION

LONGOBARDI, District Judge.

On November 20, 1987, Beckley Coal Mining Company ("Beckley") filed a petition for reorganization under Chapter 11 of the Bankruptcy Code ("the Petition"). On December 16, 1987, Beckley filed an application for interim relief from its obligations under the National Bituminous Coal Agreement of 1984 ("the Wage Agreement"). In particular, it requested an order allowing it to cease providing certain benefits to laid off employees who are covered by the

Wage Agreement. After a hearing, the application was denied and, on December 28, 1987, Beckley filed a Notice of Appeal and an Application for Leave to Appeal under 28 U.S.C. § 158(a). By an Order dated December 29, 1987, this Court ordered expedited briefing on the issues and, thereafter, on January 7, 1988, heard oral argument.

Beckley's appeal from the denial of its application under 11 U.S.C. § 1113(e)[1] presents the issue of when an application for interim relief is appropriate. The Bankruptcy Judge concluded the application had to be denied because "there is no application for rejection on file, hence, there is no basis for interim relief. If the requested relief were granted absent an application for rejection, the provisions of subsection (b)(1) and (2) would be negated." Transcript ("Tr.") at 95–96. Further, the Bankruptcy Judge decided that "The Court on an application for interim relief must find compliance with the standards set

1. For purposes of convenience, 11 U.S.C. § 1113 is set forth in pertinent part as follows:

(a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good

faith in attempting to reach mutually satisfactory modifications of such agreement.

(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—

(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

(2) the authorized representative of the employees has refused to accept such proposal without good cause; and

(3) the balance of the equities clearly favors rejection of such agreement.

\* \* \* \* \* \*

(e) If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

forth in subsection (c). This has not occurred." Tr. at 95 [81 B.R. 6 at 7].

Beckley contends that this Court has jurisdiction to hear this interlocutory appeal and that the Bankruptcy Judge was in error when she concluded (1) that an application for interim relief under subsection (e) may not be granted in the absence of an application for rejection of the collective bargaining agreement as provided under subsection (b)(1) and (2); and (2) that compliance with the standards under subsection (c) is required before relief under subsection (e) is granted.

On the other hand, Appellee, United Mine Workers of America ("UMWA") contends (1) this Court is without a basis to entertain the appeal and (2) the Bankruptcy Judge was correct when she concluded Beckley had to engage in good faith bargaining prior to seeking interim relief under subsection (e) regardless of whether Beckley had made a prior application for rejection. (It was apparent from Appellee's brief that it was conceding the issue that an application for interim relief need not be preceded by an application for rejection. At oral argument UMWA confirmed that was the case.) In other words, as to its second contention as now framed, UMWA contends that interim relief may not be sought without first engaging in "good-faith bargaining."

THE APPEAL

■ Title 28, section 158(a) of the United States Code does not provide any guidelines for determining whether or not to grant an interlocutory appeal. In other cases involving interlocutory appeals from the Bankruptcy Court, this Court has held that it will apply by analogy the criteria set forth in 28 U.S.C. § 1292(b). *First American Bank of New York v. Century Glove*, 64 B.R. 958, 961 (D.Del.1986);² *see also In re American Reserve Corp.*, 71 B.R. 303 (N.D.Ill.1987); *In re United Press Intern., Inc.*, 60 B.R. 265 (Bkrtcy.D.Colo.1986); *In re Johns–Manville*, 45 B.R. 833 (S.D.N.Y.

1984); *Matter of Caribbean Tubular Corp.*, 44 B.R. 283 (D.C.P.R.1984); *United States v. Sayres*, 43 B.R. 437 (W.D.N.Y. 1984); *Bank of America, N.T. & S.A. v. World of English*, 23 B.R. 1015 (N.D.Ga. 1982). Under section 1292(b), the appellant must establish that " 'exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment.' " *Id.* quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978). It also provides that an interlocutory appeal shall be granted when the order at issue (1) "involves a controlling question of law" upon which there is (2) "substantial ground of difference of opinion" and (3) when "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *First American Bank of New York*, 64 B.R. at 967. The Third Circuit also noted that the court, when considering an interlocutory order, should be concerned with its practical aspects: "the avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possible wasted trial time and litigation expense." *Katz*, 496 F.2d at 756; *First American Bank of New York*, 64 B.R. at 967.

The Third Circuit has decided that a "controlling question of law" includes, at the very least, an order which would be reversible error on final appeal if it were erroneous. *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 755 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed. 2d 125 (1974); *First American Bank of New York*, 64 B.R. at 967. Beckley contends that the Bankruptcy Judge applied the improper standards in determining whether Beckley should be granted relief under subsection (e). The Bankruptcy Judge denied Beckley relief because Beckley did not file an application for rejection of the collective bargaining agreement and because Beckley did not comply with subsection (c). Tr. at 94–95.³ If Beckley's

---

2. Since that decision, the Third Circuit has held that the Bankruptcy Court need not certify the appeal to the District Court. *In re Bertoli*, 812 F.2d 136 (3d Cir.1987).

3. The Appellee contends that the controlling question of law is whether Beckley is required to negotiate in good faith before seeking interim relief. Appellee Brief, Docket Item ("D.I.") 9 at

position is correct, then the order below would be erroneous and reversible as a matter of law. Furthermore, if an interlocutory appeal were not granted, then Beckley could be harmed *pendente lite* since it may not be granted needed relief because of the denial of procedural benefits. Thus, Beckley satisfies the first element under section 1292(b).

Beckley next asserts that there is a substantial ground for a difference of opinion.[4] Beckley contends there is no case law which supports the proposition that it must first apply for rejection of the collective bargaining agreement before petitioning for interim relief. Indeed, Beckley contends that other courts have granted interim relief without requiring that the debtor in possession file an application for rejection. Beckley also contends that requiring a debtor seeking interim relief under subsection (e) to comply with subsection (c) is contrary to the plain language of the statute. Based upon this Court's analysis of subsection (e) and of the case law on this issue, this Court concludes that there is a substantial ground for a difference of opinion as to the order below. *See* discussion *infra.*

Finally, Beckley contends that granting this appeal will "materially advance the ultimate termination of the litigation." Beckley correctly points out that section 1292(b) is being applied to the Bankruptcy situation by analogy. As such, since a Bankruptcy proceeding is not adversarial, it is difficult to say that granting the appeal may lead to a termination of the litigation. It suggests, however, that granting the appeal will facilitate the primary goal of the Chapter 11 proceeding; that is, the successful reorganization of the company.

Beckley produced evidence at the proceedings below that tends to establish it only had $638,000 cash on hand. Tr. at 30. This was then reduced by $57,000 for medical payments due October 31, 1987, by $252,000 for its estimated medical payments under the collective bargaining agreement for November and December and by $200,000 for its holding costs for December. *Id.* This left approximately $128,000. *Id.* There was testimony that if these amounts were required to be paid, Beckley could remain open until January 12, 1988. As a result, Beckley argues that if this appeal is granted and if subsequently the Bankruptcy Court grants interim relief, it could stay in operation and survive liquidation.

Appellee suggests that Beckley may have more money than what it says it has. For instance, Beckley has approximately $400,000 in past due yet uncollected receivables and $262,000 in receivables which would come due about this time. Tr. at 40. The past due receivables are the subject of an impending lawsuit and it is also questionable whether the $262,000 can be collected. *Id.* The Appellee also pointed out that Beckley is to receive a $1.6 million tax refund. Tr. at 48. However, no mention was made of when it was to be received by Beckley. Finally, the Appellee argues in its brief that Beckley's appeal is premature since it can re-petition for interim relief in the Bankruptcy Court after it begins bargaining with the union.

Beckley has satisfied the third criteria under section 1292(b). This Court notes that of the evidence produced by the Appellee, nothing contradicted Beckley's evidence that it has only $638,000 on hand

---

8. The Appellee cites subsection (b)(1) for support.

The Bankruptcy Judge held that Beckley was not entitled to interim relief because Beckley failed to file an application for rejection. Tr. at 95. Under section 1113, in order to file an application for rejection, the debtor must comply with subsections (b)(1) and (2), *i.e.,* the debtor must negotiate in good faith. Consequently, the Bankruptcy Judge's holding subsumes the question of whether a debtor must comply with subsection (b). As a result, one of the issues before this Court is whether a debtor

must comply with section 1113(b) in order to be granted interim relief under subsection (e). *See* discussion *infra.*

4. The Appellee seems to argue that there is no ground for difference of opinion since Beckley did not negotiate with the correct representatives. Appellee Brief, D.I. 9, at 14. The question would seem, however, whether there is substantial ground for difference of opinion on the issue of whether or not Beckley must first bargain before applying for interim relief.

and, if required to make those expenditures noted above, most of it will be paid out by January 12, 1988. Consequently, there is the possibility of avoiding irreparable harm to the debtor in possession if he is successful on appeal. It is this possibility that makes the opinion of the Bankruptcy Court so crucial in the determination of whether this appeal meets the criteria of section 1292(b). Left as it stands now, Beckley would have to comply with not only the provisions of (b)(1) and (b)(2) but also files an application for rejection. All of this takes time that could jeopardize the viability of Beckley. Whether that is so, or whether interim relief should be denied need not be decided now. That is something to be decided by the Bankruptcy Court. But in the process of reorganization, Beckley should have the benefit of all of the procedures deemed appropriate by Congress. Denying it any one of the benefits the law provides could jeopardize the viability of any reorganization. Considering the finality of that option, it is crucial that Beckley be given the opportunity to appeal. This Court finds that granting the interlocutory appeal may materially advance the ultimate termination of the Chapter 11 proceeding; that is, the successful reorganization of Beckley.

## GRANTING INTERIM RELIEF UNDER SECTION 1113(e)

Having allowed the appeal, there are two issues before this Court: (1) when may a debtor in possession appeal for interim relief under subsection (e); and (2) what standards must a court use in determining whether to grant a debtor in possession interim relief under subsection (e). This Court may undertake a plenary review of the Bankruptcy Court's conclusion of law. *Hassler v. Assimos,* 53 B.R. 453, 456 (D.Del.1985).

*When May Interim Relief Be Granted Under Section 1113(e)*

Section 1113(e) provides that interim relief may be granted "during *a period* when the collective bargaining agreement continues in effect." (Emphasis added). The issue before this Court is how will the phrase "a period" be construed.

The Bankruptcy Court limited the time in which Beckley could petition for interim relief to a period after it applies for rejection of the collective bargaining agreement. Tr. at 95. This would prevent subsection (e) from being used to circumvent the requirements of subsection (b)(1). *Id.* at 94. Under this approach, Beckley would also be foreclosed from petitioning for interim relief until after it has submitted its proposal to an authorized representative of the employees and begun negotiations in good faith since these are prerequisites for filing an application for rejection. *See* section 1113(b). The Court stated that subsection (f), which prohibits the unilateral termination or alteration of any provision of a collective bargaining agreement, reinforced its conclusion. *Id.*

The purpose of subsection (e) is to allow the Court sufficient flexibility to provide the debtor in possession temporary economic relief under certain circumstances in order to carry out the objective of Chapter 11; that is, to preserve the business, if possible, for the benefit of all. *See In re Salt Creek Freightways,* 46 B.R. 347, 351 (Bkrtcy.D.Wyo.1985); *In re Evans Products Co.,* 55 B.R. 231 (Bkrtcy.S.D.Fla.1985); 130 Cong.Rec. H7495 (daily ed. June 29, 1984) (remarks of Representative Lungren). It seems to this Court that to limit the time at which the interim relief under subsection (e) becomes available to sometime after the application for rejection would thwart the purpose of this subsection. In some situations, that presents a rather limited window of time which would guarantee liquidation rather than reorganization. Beckley would have to draft a proposal which covers only "necessary modifications" in the collective bargaining agreement that are "necessary to permit" its reorganization. 11 U.S.C. § 1113(b)(1)(A). This proposal would then be submitted to the UMWA's authorized representative, along with "such relevant information as is necessary to evaluate the proposal." 11 U.S.C. § 1113(b)(1)(A) and (B). Both sides would then have to engage in good faith negotiations beginning on the day Beckley makes its proposal. 11 U.S.C. § 1113(c).

Such a result would not carry out the purpose of subsection (e). Rather than providing a court flexibility to fashion emergency relief, it requires the debtor to follow a rigid and prolonged process which cannot be adapted to meet his individual needs.

Furthermore, this Court does not share the concern that the provisions of subsection (b)(1) and (2) would be negated by allowing a debtor in possession to petition for interim relief at any time after it petitions for Chapter 11. The purposes behind the requirement of subsection (b) can only be promoted and enhanced by an enlightened and appropriately practical condition to the application for or the granting of such relief. After all, it is only interim relief from the collective bargaining agreement that is being sought. The terms and conditions are neither terminated nor permanently altered. *In re Evans Products Co.*, 55 B.R. at 234. Conditioning such relief would also comply with the provisions of subsection (f). *See In re Salt Creek Freightways*, 46 B.R. at 351. Finally, a court granting relief under subsection (e) may retain jurisdiction over the parties in order to modify the alternatives granted if the situation lends itself to such. *In re Evans Products Co.*, 55 B.R. at 234. Since subsection (e) affords only temporary relief by allowing only interim changes in the collective bargaining agreement and since the provision itself states that the application for rejection is not rendered moot, this Court does not find that allowing a debtor in possession to petition for relief under section 1113(e) any time after petitioning for Chapter 11 negates subsection (b). To the contrary, since the court may fashion the relief under subsection (e), a broader reading of "a period" seems to facilitate moving the parties towards negotiation and ultimately complying with section 1113(b).

Finally, this Court finds support for its position that "a period" could not be read so narrowly. In *In re Salt Creek Freight-*

*ways*, the debtor in possession did not file an application seeking rejection of the collective bargaining agreement. *In re Salt Creek Freightways*, 46 B.R. at 348. The union argued that when subsection (e) specified granting interim relief during "a period" when the collective bargaining agreement was in effect, it limited the availbility of interim relief "only to the period following an unsuccessful attempt of rejection." *Id.* at 349–50. The court stated that "[t]he plain language of the statute does not contain such limitation.... Nothing in the context of the use of the word 'a' indicates that it is intended to mean something more specific that [sic] any one of the various times in which a collective bargaining agreement remains in effect." *Id.* at 350–51. The court rejected the union's position and decided that there were no prerequisites to when a debtor in possession could apply for interim relief. In *In re Evans Products Co.*, the debtor in possession both filed for Chapter 11 protection and moved under subsection (e) for interim relief on October 15, 1985. The court heard arguments on the matter on November 14, 1985. The debtor did not initiate an application for rejection. The court granted the debtor relief under subsection (e) noting that subsection (e) was designed "to provide temporary economic relief for a debtor in reorganization under the precise circumstances present here."[5] The Court in *In re Evans Products Co.* applied subsection (e) in such a way that it could meet the emergency situation as presented and its decision furthered the goals of Chapter 11.

■ Based upon this Court's reading of the plain language of subsection (e) in light of its purpose and based upon the decisions of other courts that have addressed this issue, this Court holds that a debtor in possession who has filed for protection under Chapter 11 may apply for interim relief under section 1113(e) at any time.[6] There

---

**5.** The U.S. Bankruptcy Court for the District of Colorado seems to follow this line of case law. The debtor filed for Chapter 11 on April 12, 1985, was granted interim relief under subsection (e) on April 22, 1985, and filed an application for rejection on June 10, 1985. *In re Mile*

*Hi Metal Systems, Inc.,* 67 B.R. 114 (D.Colo. 1986).

**6.** Although the Third Circuit has not directly addressed this issue, this Court's holding seems in line with the Third Circuit's understanding of

is nothing in the wording of the statute, in the purpose behind this subsection or in the case law to suggest that the phrase "a period" is limited to any time other than when the collective bargaining agreement is in effect. As a matter of fact, the choice of those words appears to be an intentional departure from the more specific prerequisites as provided for in subsection (b)(1). In that subsection, Congress went to elaborate lengths to explain that a bargaining proposal under (b)(1)(A) can be filed "subsequent to filing a petition and prior to filing an application seeking rejection...." In light of such specification, compare the language of subsection (e). It says simply and directly that the motion for interim relief may be filed at any time "during a period when the collective bargaining agreement continues in effect...." Why would Congress, in drafting subsection (e), digress from the elaborate specification for sequential actions in subsection (b)(1) if it intended that interim relief had to be preceded by the provisions of (b)(1) and (b)(2) and the filing of an application for rejection. Clearly, if the sequence of prerequisites were so important in those provisions, subsection (e) should not be construed as Congress' oversight or its mistake in the use of inartistic language. I think not. Rather, this Court is moved to conclude that the choice of language was deliberate and the words in subsection (e) should be construed literally. They mean exactly what Congress intended. Anytime during the existence of a collective bargaining agreement, a debtor in reorganization may petition for interim relief.

Beckley need not file an application for rejection of the collective bargaining agreement before it can be granted interim relief. Nor must Beckley comply with the requirements of subsection (b) (*i.e.*, file its proposal with the authorized representative and engage in negotiations as required under subsections (b)(1) and (2)) before it can petition for interim relief under subsection (e).[7]

*What Standards Are To Be Used When Deciding Whether To Grant Interim Relief Under Section 1113(e)*

The final issue before this Court is whether Beckley must comply with subsection (c) in order to be granted relief under subsection (e). Section 1113(c) does not apply in determining whether to grant relief under section 1113(e).[8]

The Third Circuit has stated that the "focus for the ultimate issue of the debtor's application for rejection is different" than the focus for determining the applicability of interim relief under subsection (e). *Wheeling–Pittsburgh Steel,* 791 F.2d at 1085; *see also In re Salt Creek Freightways,* 46 B.R. at 350 ("the standard for the rejection of collective bargaining agreements is separate and distinct from the standard for the authorization of interim changes under subsection (e).") The Third Circuit has stated that a court may grant interim relief under subsection (e) when, following a hearing, it finds that "an interim change is 'essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate.'" *Wheeling–Pittsburgh Steel,* 791 F.2d at 1085, citing section 1113(e). Consequently, this Court holds that subsection (c) does

section 1113(e). The Third Circuit has pointed out that "Congress recognized that there might be *immediate problems* of an *emergency* nature *in individual* cases" and that subsection (e) was implemented to address these concerns. *Wheeling–Pittsburgh Steel v. United Steelworkers,* 791 F.2d 1074, 1085 (3d Cir.1986) (emphasis added). This Court's holding allows a Bankruptcy Court to address immediate problems of urgency on an individual basis rather than requiring that a debtor in possession and his particular problems fit into a specific window of time.

7. In this particular case, the union's position which sought the prerequisite of "good faith

bargaining" before any petition for modification of the collective bargaining agreement, may be a moot issue. As of this date, the Court was apprised of the fact that the parties have commenced negotiations. Whether that is so or not or its import in the scheme of things are matters best left to the Bankruptcy Court.

8. Both parties conceded before this Court at oral argument that subsection (c) is not the correct standard for determining whether a party is entitled to interim relief under subsection (e).

not apply to determine whether interim relief should be granted under subsection (e). Rather, the Bankruptcy Court, in deciding whether to grant relief under section 1113(e), should determine after a hearing whether the relief is "essential to the continuation of the debtor's business or in order to avoid irreparable damage to the estate."

The decision of the Bankruptcy Court requiring the application for rejection to precede a petition for interim relief under subsection (e) and imposing the standards of subsection (c) for relief under subsection (e) is reversed.

The matter is remanded to the Bankruptcy Court for further proceedings in accordance with this decision.