**In re CEDAR RAPIDS MEATS, INC., dba Farmstead Foods, Debtor.**

**Bankruptcy No. L-90-00445C.**

United States Bankruptcy Court, N.D. Iowa.

June 25, 1990.

Thomas J. Lallier, Mackall Crounse & Moore, Minneapolis, Minn., Thomas Wilkinson, Jr., Elderkin & Pirnie, Cedar Rapids, Iowa, for debtor.

Matthew Glasson, Glasson, Grove & Sole, Cedar Rapids, Iowa, for UFCW and Local P–3.

Harry Dixon and Jill Griffee–Ross, Dixon & Dixon, Omaha, Neb., for unsecured creditors committee.

Dan Childers, Childers & Vestle P.C., Cedar Rapids, Iowa, for Wilson Foods Corp.

Kristin Tolvstad Davis, U.S. Attys. Office, Cedar Rapids, Iowa, for I.R.S.

Julie Cohen, Cedar Rapids, Iowa, for Iowa Elec. Light & Power Co.

Janet Reasoner, Cedar Rapids, Iowa, for U.S. Trustee's Office.

Joseph Peiffer, Cedar Rapids, Iowa, for Quality Chef Foods.

David Heller, Goldberg, Kohn, Bell & Black, Chicago, Ill., for Heller Financial, Inc.

## RULING RE: DEBTOR'S MOTION FOR INTERIM RELIEF FROM CERTAIN PROVISIONS OF A COLLECTIVE BARGAINING AGREEMENT

MICHAEL J. MELLOY, Chief Judge.

The matter before the Court is the Motion of Cedar Rapids Meats, Inc., d/b/a Farmstead Foods ("the Debtor"), for Interim Relief from Certain Provisions of a Collective Bargaining Agreement ("the Motion"). The Motion is opposed by the Pension Benefit Guaranty Corporation ("PBGC"), the Internal Revenue Service ("IRS"), and Local P–3, United Food and Commercial Workers, AFL–CIO, and the retirees of Local P–3 ("the Union"). This is a core proceeding under 28 U.S.C. section 157(b)(2)(A). The following constitutes findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## MEMORANDUM AND ORDER

The Debtor seeks interim relief from certain provisions of its collective bargaining agreements with the Union, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, and the United Plant Guard Workers of America. Those provisions are identified in the Memorandum filed by the Debtor on May 11, 1990 ("the Memorandum"). In general terms, they deal with the Debtor's obligation to pay post-petition health and welfare benefits (including retiree benefits) and to make contributions to its pension plans. The Debtor's request to suspend those provisions is based upon the following sections of the Bankruptcy Code:

**1113(e)** If during a period when the collective bargaining agreement continues in effect, and *if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate,* the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot. [Emphasis added].

**1114(h)(1)** Prior to a court issuing a final order under subsection (g) of this section [providing for modification in the

payment of retiree benefits], *if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate,* the court, after notice and a hearing, may authorize the trustee to implement interim modifications in retiree benefits. [Emphasis added].

105(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. * * * *

The Debtor contends that (1) interim relief is essential to avoid irreparable damage to the estate; (2) its attempts to reorganize cannot succeed if its post-petition funding obligations continue to accrue at the rates described in the Memorandum[1]; (3) the accrual of potential priority claims[2] in favor of the IRS, the retirees, and PBGC will cause an inequitable distribution of assets among creditors of the bankruptcy estate; (4) negotiation with the unions is not a prerequisite to the granting of interim relief under sections 1113(e) and 1114(h)(1); (5) retroactive relief may be awarded pursuant to section 105(a); and (6) the Debtor's pension plan obligations may be suspended pending termination of the plan.

The Union opposes the Debtor's Motion on the grounds that (1) there has been no showing that interim relief is warranted under sections 1113(e) and 1114(h)(1); (2) the requested relief would have little impact on the Debtor's current financial condition because most of the claims in question have already accrued; (3) the Debtor is attempting to circumvent the negotiation process by seeking permanent modifications to the collective bargaining agreements in the guise of "interim relief"; and (4) the Debtor's request for retroactive relief and immediate suspension of its pension plan obligations cannot be granted by this Court.

The IRS contends that (1) any reliance on section 105(a) is barred by the sovereign immunity doctrine; (2) the authorities cited by the Debtor do not support its contention that this Court may suspend the Debtor's statutory obligation to fund the pension plans[3]; and (3) the priorities assigned to any claims held by the IRS, the retirees, and PBGC are a matter of legislative enactment, not of "inequitable distribution" to creditors of the estate.

PBGC argues that (1) suspension of the collective bargaining agreements would not relieve the Debtor of its statutory responsibility to contribute to the pension plans; (2) the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code both create independent funding requirements which are not affected by the Debtor's contractual obligations under the collective bargaining agreements; (3) such statutory funding requirements cannot be avoided under sections 1113(e) and 1114(h)(1); (4) ERISA provides the exclusive means of terminating (or suspending) an ERISA-qualified pension plan; and (5) the Debtor's funding responsibili-

1. The Memorandum states that (1) the cost of providing health and welfare benefits to retirees alone may exceed $145,000 per month; (2) the pension plan funding obligation is accruing at the rate of approximately $225,000 per month; (3) post-petition contributions of at least $675,000 may accrue before the pension plan can be terminated; (4) the IRS may assess an excise tax of $675,000 for past-due pension plan contributions; and (5) the first priority claims of the IRS and PBGC relating to the pension plan will probably exceed $1.3 million.

2. The Debtor does not concede, however, that such claims would qualify for administrative expense priority. Nothing in this ruling shall be interpreted to imply the Court has made any determination as to whether any particular claimant or class of claimants is entitled to administrative expense priority.

3. The Debtor cites *In re Bastian,* 45 B.R. 717 (Bankr.W.D.N.Y.1985), and *In re Bruce,* 80 B.R. 927 (Bankr.N.D.Ill.1988), to support its contention that a bankruptcy court may authorize the termination of a pension plan without regard to the termination procedures required by ERISA. The Debtor also contends that the court may downgrade the priority of IRS and PBGC claims and subordinate them to the claims of other unsecured creditors, citing *In re Airlift International, Inc.,* 97 B.R. 664 (Bankr.S.D.Fla.1989). The IRS correctly observes that *Bruce* and *Bastian* dealt with rejection of pension plans as executory contracts under 11 U.S.C. section 365. PBGC also contends that *Bastian* was effectively overruled by amendments to ERISA in 1986.

ties cannot be suspended before the pension plans have been terminated in accordance with ERISA.

To obtain interim relief under sections 1113(e) and 1114(h)(1), the Debtor must demonstrate that the requested relief is "essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate." The Debtor has suspended its operations and it does not contend that relief is "essential to the continuation of [its] business." *Compare Beckley Coal Min. v. United Mine Workers of Amer.,* 98 B.R. 690 (D.Del.1988) (relief requested to insure continued interim operation of the debtor's business); *In re Landmark Hotel & Casino, Inc.,* 78 B.R. 575 (9th Cir. BAP 1987); *In re Evans Products Co.,* 55 B.R. 231 (Bankr.S.D.Fla. 1985); *In re Salt Creek Freightways,* 46 B.R. 347 (Bankr.D.Wyo.1985) (same).

▋ The question presented is whether the requested relief is warranted "to avoid irreparable damage to the estate." The Debtor contends that such damage will occur if the IRS, the retirees, and PBGC obtain administrative expense priority for their post-petition claims. The following statement appears at page 8 of the Debtor's Memorandum:

> If Debtor is not relieved of its obligation to make post-petition contributions to the Pension Plan, the first priority claims of the PBGC and the IRS relating to these contributions will probably exceed $1.3 million. These claims will not provide any greater benefits to Debtor's retirees, nor will they add any value to the estate. Indeed, if the PBGC and the IRS are successful in asserting first priority status for their claims, they will compete with current and former employees' claims for benefits. This would cause an inequitable distribution of assets among creditors, and would therefore result in irreparable damage to the estate.

The Debtor also contends that the accrual of health and welfare benefits under its collective bargaining agreements poses the threat of "irreparable damage" to the bankruptcy estate:

> Debtor presented unrebutted evidence at the hearing on April 18, 1990 that its cost of continuing to provide these benefits to retirees alone may exceed $145,000 per month. If a substantial number of Debtor's former employees elect to continue their coverage under the plan, these expenses could be significantly increased. Expenses of this size will make it virtually impossible for the Debtor to reorganize as an ongoing business. Further, if Debtor is unable to reorganize, first priority claims for these benefits (virtually all of which will be payable to former employees who have rendered no services to Debtor since the petition was filed) will unfairly compete with the priority claims of creditors who have assisted Debtor in its attempt to reorganize.

Memorandum at page 5, footnote omitted.

It appears that the Debtor's basic complaint is with the scheme of administrative expense priorities established under the Bankruptcy Code. Section 1114(e)(2) provides that "[a]ny payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title." Section 503(b)(1)(B) also assigns administrative expense priority to certain taxes incurred by the bankruptcy estate. PBGC contends that "[a]t least a portion of [its] claim on behalf of the Plan for unpaid minimum funding contributions due after the petition date will be entitled to administrative expense priority." PBGC's Response filed May 21, 1990 at page 8, citing Code sections 507(a)(1) and 503(b)(1)(A) and *Columbia Packing v. PBGC,* 81 B.R. 205 (D.Mass.1988). In view of those Code provisions, the Court is not persuaded that the accrual of potential priority claims in favor of the retirees, the IRS, and PBGC constitutes "irreparable damage" for purposes of sections 1113(e) and 1114(h)(1).[4] The allocation of administrative expense priorities under section 503

---

**4.** The Court is making no determination as to the amount or the relative priority of any claims which might accrue in favor of the retirees, the IRS, or PBGC.

reflects the views of Congress concerning the equitable distribution of the assets of the estate. This Court simply cannot agree with the Debtor's assertion that the requested relief is essential to prevent an "inequitable distribution" of estate assets.

 The Debtor's reliance on section 105(a) as an alternate source of interim relief also appears to be misplaced. Section 105 allows a bankruptcy court to apply equitable principles that are necessary or appropriate in a particular case to carry out the provisions of the Code. *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222, 1230 (8th Cir.1987). While the court has broad powers under section 105(a), they may only be exercised in a manner which is consistent with the provisions of the Code. *Johnson v. First Nat. Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). It would be inappropriate to use section 105(a) in a manner which is inconsistent with sections 1113(e) and 1114(h)(1), two Code provisions which deal specifically with the issue of interim relief. Since the Debtor has failed to establish that such relief should be granted under sections 1113(e) and 1114(h)(1), section 105(a) cannot be used as an alternate source of relief.

The Debtor also contends that the accrual of potential priority claims threatens the prospects of a successful reorganization. The Court has noted in a previous ruling that (1) such an argument may be made as to any administrative expense claim that may be allowed under the Bankruptcy Code, and (2) the Debtor has not filed a plan and there is little evidence to indicate what its reorganization prospects might be. "Ruling re: Debtor's Motion to Terminate Pension Plan," filed June 11, 1990, at page 5.

The Court recognizes that the accrual of additional administrative expenses will work to the detriment of those priority creditors who have priorities below administrative expense and general unsecured creditors. However, that fact alone cannot justify granting the relief sought by the Debtor. Congress has made the policy decision to grant administrative expense status to the claimants who will be affected by the motion before the Court. The Court does not believe that relief can be granted based solely upon the alleged "inequitable" distribution which will result from the statutorily-created distribution scheme. Consequently, the Debtor's request to suspend its obligations under the collective bargaining agreements pursuant to sections 1113(e) and 1114(h)(1) must be denied.

### ORDER

IT IS THEREFORE ORDERED that the Debtor's Motion for Interim Relief from Certain Provisions of a Collective Bargaining Agreement is denied.

DONE AND ORDERED.