872 F.2d 857
 131 L.R.R.M. (BNA) 2093, 57 USLW 2613,
111 Lab.Cas. P 11,082,
21 Collier Bankr.Cas.2d 60, 19 Bankr.Ct.Dec. 362,
Bankr. L. Rep. P 72,847
 In re LANDMARK HOTEL & CASINO, INC., a Nevada corporation,
d/b/a Landmark Hotel & Casino, Debtor.
LANDMARK HOTEL & CASINO, INC., a Nevada corporation, d/b/a
Landmark Hotel & Casino, Appellant,
v.
LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS CULINARY WORKERS
UNION, LOCAL NO. 226, and Bartenders Union, Local No. 165;
International Brotherhood of Electrical Workers, Local No.
357; International Union of Operating Engineers, Local No.
501; International Brotherhood of Painters & Allied Trades
Local No. 159; Professional, Clerical and Miscellaneous
Employees, Local No. 995; United Brotherhood of Carpenters
and Joiners of America, Local No. 1780, Appellees.
 No. 87-2891.
 United States Court of Appeals,
Ninth Circuit.
 Argued Nov. 17, 1988.
Submission Deferred Resubmitted March 31, 1989.
Decided April 11, 1989.
 
 Candace C. Carlyon, Wiener, Waldman, Gordon & Silver, Ltd., Las Vegas, Nev., for debtor-appellant.
 Richard G. McCracken, Davis, Cowell & Bowe, San Francisco, Cal., Lewis N. Levy, Levy, Goldman, Levy, Los Angeles, Cal., for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before GOODWIN, Chief Judge, SNEED and CANBY, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Debtor Landmark Hotel & Casino, Inc. (Landmark) appeals the judgment of a bankruptcy appellate panel (BAP) which upheld a bankruptcy court's decision to grant Landmark certain interim relief prior to its authorizing Landmark to reject its collective bargaining agreements under 11 U.S.C. Sec. 1113 (Supp. IV 1986). Landmark argues that the bankruptcy court should have authorized it to reject the contracts immediately rather than granting interim relief only. We hold that, under 28 U.S.C. Sec. 158(d) (Supp. IV 1986), we lack jurisdiction to review Landmark's claim even though the bankruptcy court authorized rejection of the collective bargaining agreements while this appeal was pending before the BAP and no party appealed therefrom.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 Landmark filed a chapter 11 bankruptcy petition on July 31, 1985. Shortly afterward, in an effort to reduce its labor expenses, Landmark attempted to negotiate changes in its collective bargaining agreements with the representatives of its 500 unionized employees. The representatives included the bargaining units of the Professional, Clerical and Miscellaneous Employees Union, Local 995, the International Union of Operating Engineers, Local 501, the United Brotherhood of Carpenters and Joiners of America, Local 1780, the International Brotherhood of Electrical Workers, Local 357, the International Brotherhood of Painters & Allied Trades, Local 159 (collectively referred to as the Trade Unions), and the Local Joint Executive Board of Las Vegas (the Joint Board), which bargains on behalf of both the Bartenders Union, Local 165, and the Culinary Workers Union, Local 226.
 
 
 3
 Pursuant to this renegotiation effort, Landmark proposed in October 1985 various modifications of the collective bargaining agreements to the Joint Board. Among other changes, Landmark sought to reduce wages by fifteen percent, to eliminate scheduled wage increases, to terminate a pension plan, to substitute its own insurance scheme for the unions' health and welfare plan, and to limit holidays and vacations. After requesting information from the debtor, the Joint Board sent Landmark a letter rejecting the proposal. The Joint Board found some of the provisions unnecessary; however, it also stated as a primary objection that it could not accept the proposal because, pursuant to an oral "me-too" agreement, it would have to offer the terms of the proposal to other local establishments. When Landmark presented similar proposals to the Trade Unions in November, they also rejected them on substantially similar grounds. That is, the Trade Unions said that they could not accept the proposals because their contracts with other employers contained "most favored nations" provisions that would have the same effect as the Joint Board's "me-too" agreement.
 
 
 4
 On December 26, 1985, Landmark took the next step and filed an application for authorization to reject the collective bargaining agreements. The bankruptcy court held hearings on the application on January 23 and 24, 1986, but denied authorization to reject, without prejudice, after finding that Landmark had not satisfied the requirements of 11 U.S.C. Sec. 1113(c) (Supp. IV 1986). The court found, specifically, that Landmark had not shown the necessity of all the proposed modifications and that the balance of equities did not favor rejection.
 
 
 5
 Landmark revised its proposals on January 31, 1986. It eliminated various modifications and attempted to demonstrate the necessity of those remaining. The unions were unmoved and rejected the revised proposals. Landmark was similarly staunch and did not accept a counterproposal by the Joint Board. On February 14, 1986, the court held a hearing on a second motion by Landmark for authorization to reject the agreements. The court neither authorized rejection, nor denied the application, but instead granted interim relief to Landmark under Sec. 1113(e). The court entered a written order incorporating its findings on June 2, 1986. This relief did not satisfy Landmark.
 
 
 6
 The interim relief order allowed Landmark to reduce wages, eliminate future wage increases, limit vacations and holidays, and withhold pension contributions from its employees' wages. The order required Landmark to contribute to the unions' health and welfare plans and required the unions to arbitrate the problem of the me-too agreement and the most favored nations clause with their other employers. On June 17, 1986, Landmark appealed the order to the BAP, contending that, having demonstrated all of the requirements for outright rejection, it was entitled to that relief. The Joint Board, with an extension of time, properly cross-appealed the order on July 17, 1986.
 
 
 7
 While the appeal and cross-appeal were pending before the BAP, the bankruptcy court quite properly continued to address the problem of the collective bargaining agreements. The court extended the duration of the interim relief order several times until January 5, 1987. At that point the court found rejection appropriate because in its view the unions had failed to arbitrate in accordance with the interim relief order. The court entered a written order authorizing rejection on February 11, 1987, pursuant to Landmark's proposal of January 31, 1986. Neither side appealed.
 
 
 8
 On September 30, 1987, the BAP upheld the bankruptcy court's interim relief order, finding that the balance of equities did not clearly favor rejection. See Landmark Hotel & Casino, Inc. v. Local Joint Exec. Bd. (In re Landmark Hotel & Casino, Inc.), 78 B.R. 575, 584-85 (9th Cir. BAP 1987). The BAP did not consider its decision moot, even though Landmark, pursuant to the February 11, 1987 authorization, had rejected the collective bargaining agreements by this time. The parties still disputed Landmark's obligation under the interim relief order to turn money over to employee funds. See id. at 582. Apparently, although Landmark withheld pension contributions, it failed to turn the money over to the pension plan; Landmark also allegedly failed to make certain payments to the health and welfare plans. Landmark now reportedly owes about $800,000 to these funds. See id.
 
 
 9
 Landmark appealed in a timely fashion the BAP's decision to this court. Landmark seeks from us, as it sought from the BAP, an order instructing the bankruptcy court retroactively to reject the union contracts as of January 24, 1986, or in the alternative, as of February 14, 1986. Landmark's position is that such an order would absolve it of liability for failing to comply with the interim relief order.
 
 II.
 JURISDICTION[1]
 
 10
 Landmark is appealing an order of a bankruptcy court under 11 U.S.C. Sec. 1113(e) (Supp. IV. 1986) affirmed by a BAP. Section 1113(e) provides:
 
 
 11
 If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court ... may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement.... The implementation of such interim changes shall not render the application for rejection moot.
 
 
 12
 The unions contend that an order under this section is not final and, therefore, not appealable to this court. We agree.
 
 A. Jurisdiction of Courts of Appeals
 
 13
 In bankruptcy cases, under 28 U.S.C. Sec. 158(d) (Supp. IV 1986), we have jurisdiction only over appeals from "final decisions, judgments, orders, and decrees."[2] We have defined a final decision in the bankruptcy context as one that " 'ends the litigation on the merits and leaves nothing for the court to do but [execute the] judgment.' " Dental Capital Leasing Corp. v. Martinez (In re Martinez), 721 F.2d 262, 265 (9th Cir.1983) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). We have explained, more specifically, that such a decision must "finally determine the discrete issue to which it is addressed.... When further proceedings in the bankruptcy court will affect the scope of [an] order, the order is not subject to review in this court...." Four Seas Center, Ltd. v. Davres, Inc. (In re Four Seas Center, Ltd.), 754 F.2d 1416, 1418 (9th Cir.1985) (citation omitted); see Turgeon v. Victoria Station Inc. (In re Victoria Station Inc.), 840 F.2d 682, 683-84 (9th Cir.1988).
 
 
 14
 B. Interim Relief Orders Are Not Final Orders
 
 
 15
 To the extent that an interim relief order under Sec. 1113(e) addresses any "discrete issue," we believe that it addresses the issue whether a debtor must abide by all, some portion, or none of the terms of its collective bargaining agreements after the filing of a bankruptcy petition. We do not believe that such an order finally determines this issue for four reasons.
 
 
 16
 First, the language of Sec. 1113(e) expressly permits a debtor to continue to seek authority to reject a collective bargaining agreement even after a bankruptcy court has granted interim relief. Such authority, if granted, unavoidably would alter or terminate the interim relief. Second, the section also seems to permit a court to order further interim relief if necessary. Such additional relief, of course, would alter the initial interim relief. Third, even if an interim relief order makes rejection contingent on the occurrence of an event, as in this case, the order is not a final determination of all issues because whether the event has occurred may be contested. The Joint Board and the Trade Unions, for example, could dispute whether they had failed to arbitrate the me-too and most favored nations clauses. Fourth, we find orders providing interim relief under Sec. 1113(e) highly analogous to orders appointing interim trustees under 11 U.S.C. Sec. 701(a) (Supp. IV 1986) and those awarding interim compensation under Sec. 331 (1982). The courts of appeals have rejected appeals of orders under these sections for lack of finality and we see no convincing way to distinguish their opinions. See, e.g., Foster Sec., Inc. v. Sandoz (In re Delta Servs. Indus., Etc.), 782 F.2d 1267, 1271-72 (5th Cir.1986) (interim trustee); Stable Mews Assocs. v. Togut (In re Stable Mews Assocs.), 778 F.2d 121, 123-24 (2d Cir.1985) (interim compensation); Salomon v. Logan (In re International Envtl. Dynamics, Inc.), 718 F.2d 322, 325 & n. 5 (9th Cir.1983) (same). See also In re Klein, 70 B.R. 378, 380 (N.D.Ill.1987) (interim trustee).
 
 
 17
 We thus hold that a debtor may not immediately appeal to this court the judgment of the BAP with respect to an interim relief order under Sec. 1113(e). To obtain review here, the debtor must wait until the bankruptcy court has rendered its ultimate order on the rejection issue. Only at that point will the bankruptcy court have determined finally all of the relevant issues. See, e.g., Truck Drivers Local 807 v. Carey Transp. Inc., 816 F.2d 82, 86-87 (2d Cir.1987) (appeal of order authorizing rejection); Century Brass Prods., Inc. v. International Union UAW (In re Century Brass Prods., Inc.), 795 F.2d 265, 269 (2d Cir.) (same), cert. denied, 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986); Wheeling-Pittsburgh Steel Corp. v. United Steelworkers, 791 F.2d 1074, 1078 (3d Cir.1986) (same). The debtor at that point can appeal any adverse effects of an interim relief order. Cf. Sackett v. Beaman, 399 F.2d 884, 889 n. 6 (9th Cir.1968) ("All interlocutory rulings [are] merged in [a] final judgment and are reviewable on the appeal therefrom.").
 
 
 18
 C. Landmark's Arguments That Its Relief Order Was Final
 
 
 19
 Landmark, nonetheless, has made three arguments that its relief order was final which merit careful attention. First, Landmark contends, in so many words, that its appeal is not interlocutory because, while the bankruptcy court had not authorized rejection of the collective bargaining agreements at the time Landmark appealed to the BAP, the bankruptcy court now has authorized rejection, and Landmark has rejected the contracts. Hearing its appeal now, Landmark insists, would not interfere with the work of the bankruptcy court. Its work is done. The case, therefore, resembles Dahlquist v. First Nat'l Bank (In re Dahlquist), 751 F.2d 295, 297 (8th Cir.1985), in which the court permitted an appeal of an order awarding an interim fee because the underlying bankruptcy proceeding had been dismissed by the bankruptcy court prior to the district court's order affirming the interim award. See also Susman v. Schmid (In re Reid), 854 F.2d 156, 158 n. 2 (7th Cir.1988) (holding interim fee award was actually final to attorneys who completed their work); Yermakov v. Fitzsimmons (In re Yermakov), 718 F.2d 1465, 1468-69 (9th Cir.1983) (same).
 
 
 20
 We are not persuaded. Here the bankruptcy court has authorized rejection of the contracts. Landmark had the opportunity to initiate an appeal after that action in which it could have presented its complaints about the interim order. It failed to use that opportunity, however. In Dahlquist, by contrast, the creditor objecting to the interim fee award never had, and never would have, a proper opportunity to appeal. Its appeal had been retained by the district court when the bankruptcy proceedings were transferred to another jurisdiction. Thus the order dismissing the bankruptcy action did not include the order granting interim compensation. Under the circumstances of this case, we decline to transform an appeal from an interlocutory order into an appeal from a final order because the underlying dispute has been resolved finally in the bankruptcy court. We believe that such a holding would create significant difficulties. It would provide debtors an incentive to delay BAP action when a bankruptcy court's final decision was reasonably imminent. On the other hand, despite its likely futility, creditors might be encouraged to hasten the BAP's disposition in an effort to insulate it from court of appeals review. We decline to find that the fortuitous timing of the bankruptcy court's final decision gives us jurisdiction.
 
 
 21
 Second, Landmark contends that we should take jurisdiction under the "pragmatic" view of finality in bankruptcy cases that this court has recognized. See, e.g., Mason v. Integrity Ins. Co. (In re Mason), 709 F.2d 1313, 1318 (9th Cir.1983). We agree that courts have expressed a willingness to hear appeals if waiting until the end of the case would cause " 'irreparable harm to the losing party.' " Id. at 1316 (quoting Levin, Bankruptcy Appeals, 58 N.C.L.Rev. 967, 985-86 (1980)); accord Farber v. 405 N. Bedford Dr. Corp. (In re 405 N. Bedford Dr. Corp.), 778 F.2d 1374, 1377 (9th Cir.1985). The authorities supporting this view, however, do not make irreparable harm an exception to the requirement of finality; instead, they merely permit the possibility of irreparable harm to influence and inform the rules governing finality. In this case, the harm that Landmark would suffer by complying with the interim order does not persuade us to find finality. When complying with an interim relief order becomes overly burdensome, a debtor should renew its application for rejection and present the new facts to bankruptcy court. We should not encourage debtors not to comply with interim orders.
 
 
 22
 Third, Landmark takes issue with the proposition that it could appeal the bankruptcy court's final order. It argues that order did not aggrieve it. See Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442-43 (9th Cir.1983) (holding that only those persons aggrieved by a bankruptcy court's order have standing to appeal). This is not correct. The interim order's consequences during its effective period were not altered by the bankruptcy court's final order. Landmark was, and is, much aggrieved by that order. This court would review that order in Landmark's appeal from the final ruling by the bankruptcy court on rejection. An appeal at that time falls precisely within the class of cases the Supreme Court contemplated when it said, "[i]n an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art[icle] III." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 334, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980) (permitting plaintiffs to appeal denial of class certification after prevailing on the merits). Although Roper addressed appeals under 28 U.S.C. Sec. 1291 (1982) rather than under Sec. 158(d) (Supp. IV 1986), we see no reason that its principle should not apply in the instant case.
 
 
 23
 It may appear that the result we reach is somewhat harsh. We recognize this but are confident that our decision will contribute some clarity to an area of law that, at best, is translucent.
 
 
 24
 APPEAL DISMISSED.
 
 
 
 [1]
 The parties originally submitted briefs addressing primarily the merits of Landmark's claim that the bankruptcy court should not have ordered interim relief. At oral argument, however, we requested, and later received, supplemental briefs on the jurisdictional issues
 
 
 [2]
 No one has questioned the BAP's jurisdiction because it has jurisdiction over interlocutory appeals under 28 U.S.C. Sec. 158(a), (b) (Supp. IV. 1986). We have held that Sec. 1292 (1982) does not cover interlocutory bankruptcy appeals. See Teleport Oil Co. v. Security Pac. Nat'l Bank (In re Teleport Oil Co.), 759 F.2d 1376, 1378 (9th Cir.1985). In an extreme case, we may review interlocutory orders by writ of mandamus, see Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble), 776 F.2d 802, 806 n. 5 (9th Cir.1985), but Landmark has not requested such relief here